IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWRENCE R. HUDSON, JR.,

      Plaintiff,

    v.

CHILDREN'S NATIONAL MEDICAL CENTER
111 Michigan Avenue, N.W.
Washington, DC 20010-2970,

      Defendant.

CIVIL ACTION NO. 1:08-cv-00876-RMU

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7 of this Court, Defendant Children's National Medical Center ("CNMC") moves to dismiss the Complaint filed against it by Plaintiff Lawrence R. Hudson, Jr. on the grounds that the Complaint fails to state any claim against CNMC upon which relief can be granted. The grounds for this Motion are set forth more fully in the Memorandum in Support of Motion to Dismiss filed contemporaneously with this Motion.

Dated: this 18th day of August, 2008          Respectfully submitted,


By:          /s/ David A. Rosenberg
             David A. Rosenberg
             D.C. Bar No. 433405

             FORD & HARRISON LLP
             1300 19th Street, N.W., Suite 700
             Washington, DC  20036
             Telephone: (202) 719-2000
             Facsimile: (202) 719-2077
             E-mail: drosenberg@fordharrison.com

             Attorneys for Defendant Children's National
             Medical Center


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 18th day of August, 2008, I electronically filed the

foregoing MOTION TO DISMISS  with the Court using the CM/ECF system which will then

send electronic notification of the filing to the following:

          James Q. Butler, Esquire
          818 18th Street, 6th Floor
          Washington, DC 20006
          Jqbutler1@hotmail.com
          Counsel for Plaintiff


                    /s/ David A. Rosenberg
                    David A. Rosenberg

DC:75419.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWRENCE R. HUDSON, JR.,

       Plaintiff,

     v.

CHILDREN'S NATIONAL MEDICAL CENTER
111 Michigan Avenue, N.W.
Washington, DC 20010-2970,

       Defendant.

CIVIL ACTION NO. 1:08-cv-00876-RMU

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7 of this Court, Defendant Children's National Medical Center ("CNMC") states as follows in support of its Motion to Dismiss the Complaint filed by Plaintiff Lawrence R. Hudson, Jr. ("Plaintiff"):

## BACKGROUND

On or about May 23, 2008, Plaintiff filed a Complaint with this Court against CNMC. In his lawsuit, Plaintiff, an African-American, alleges that, he began employment with CNMC in 2004 as a Senior Human Resources Consultant and continued in that position until he resigned on August 14, 2006.[1] *See* Compl. at ¶ 1-2. Plaintiff further alleges that, in January 2006, CNMC

---

[1] Later in his Complaint, Plaintiff also alleges that he was terminated on June 15, 2006. *See* Compl. at ¶ 11. This is just one of several inconsistencies or mis-statements littered throughout Plaintiff's Complaint. For example, Plaintiff alleges that he suffered a work-related injury in April 6, 2006 and that CNMC terminated him when he required additional recovery time. *See* Compl. at ¶ 1. However, Plaintiff later alleges that he resigned his employment in August 2006 and provides no further factual allegations to support any claims supposedly stemming from a

began the process to hire a Director of Training and Organizational Development. *See* Compl. at ¶ 8. Plaintiff contends that he applied for the position, but that, despite being qualified for the position, CNMC hired a white male before even interviewing him. *See* Compl. at ¶ 8-9. According to Plaintiff, after he was not hired for the Director of Training and Organizational Development position, CNMC made the conditions of his employment so intolerable that he was forced to resign. *See* Compl. at ¶ 10. As a result, Plaintiff alleges that CNMC discriminated against him and terminated him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[2]

As a matter of law, Plaintiff fails to state any viable cause of action against CNMC under Title VII. CNMC, therefore, has filed the present Motion to Dismiss. For the reasons stated in more detail below, this Court must dismiss Plaintiff's claims against CNMC.

## ARGUMENT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court can dismiss a complaint where the complaint fails to set forth claims upon which relief can be granted. Fed. R. Civ. P. 12(b)(6) (2008). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint, and, when deciding such a motion, a court must view the factual allegations and reasonable inferences arising therefrom in the light most favorable to the plaintiff. *Mills v.*

---

work-related injury. *See* Compl. at ¶ 10. Moreover, as is discussed in more detail below, Plaintiff also mis-states that he received a right-to-sue notice prior to filing his Complaint. *See* Part C, *infra.*

[2] CNMC vehemently denies that it has committed any of the wrongful actions attributed to it or its employees by Plaintiff and further denies that it can be held liable to Plaintiff for any of the conduct alleged in the Complaint. However, as required by the standards established for motions brought pursuant to Rule 12(b)(6), CNMC will accept the facts in the light most favorable to Plaintiff for purposes of this Motion only.

*Winter*, 540 F. Supp. 2d 178, 182 (D.D.C. 2008). To withstand dismissal under Rule 12(b)(6), a complaint must allege facts either raising a right to relief above the speculative level or stating a claim that is plausible on its face. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). Despite the liberal pleading standards permitted by federal procedural rules, a court is not bound to accept inferences unsupported by facts alleged in the Complaint and is not required to accept legal conclusions alleged in the Complaint. *Id.* at 183.

Furthermore, a court may consider documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the judge may take judicial notice when deciding a Rule 12(b)(6) motion. *Sindram v. Kelly*, Civil Action No. 06-1952, 2008 U.S. Dist. LEXIS 61661 at *5 (D.D.C. 2008) (a copy of which is attached as Ex. A). Along those lines, a court may consider a Charge of Discrimination filed by a plaintiff with the EEOC in connection with a Rule 12(b)(6) motion. *Branum v. United Parcel Serv.*, 232 F.R.D. 505, 506 n.1 (W.D. Pa. 2005) (court considered plaintiff's charge of discrimination in deciding Rule 12(b)(6) motion); *Turner v. Altivity Packaging, L.L.C.*, No. 4:07-CV-1642(CEJ), 2008 U.S. Dist. LEXIS 1109, at *3-4 (E.D. Mo. 2008) (court took judicial notice of charge of discrimination in considering timeliness of plaintiff's administrative complaint) (a copy of which is attached as Ex. B); *Zhang v. Honeywell Int'l Inc.*, No. 06-1181-PHX-MHM, 2007 U.S. Dist. LEXIS 56154, at *3 n.1 (D. Ariz. 2007) (court took judicial notice of charge of discrimination and related EEOC documents) (a copy of which is attached as Ex. C); *Ratliff v. Conagra, Inc.*, No. IP 01-0129-C H/K, 2001 U.S. Dist. LEXIS 18394, at *7-8 (S.D. Ind. 2001) (court considered charge of discrimination and right-to-sue letter in connection with Rule 12(b)(6) motion) (a copy of which is attached as Ex. D).

Viewed in accordance with these standards, Plaintiff's Complaint, on its face, shows that Plaintiff has no claims against CNMC for violation of Title VII upon which relief can be granted. Plaintiff has failed to properly exhaust his administrative remedies, as required to pursue such claims in this action, and Plaintiff misrepresents to this Court that he satisfied the administrative prerequisites before filing his Complaint. Furthermore, Plaintiff's Complaint also seeks relief to which he is not entitled by asking for compensatory and punitive damages in excess of the maximum allowed by law. Therefore, Plaintiff's claims against CNMC must be dismissed with prejudice as a matter of law.

### A.    Plaintiff Failed To Exhaust His Administrative Remedies With Respect To All Of The Claims Contained In His Complaint.

"An individual wishing to challenge an employment practice under [Title VII] must first file a charge with the EEOC." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.* , — U.S. —, 127 S.Ct. 2162, 2166 (2007); *see also*, 42 U.S.C. § 2000e-5(e)(1) (2008); 42 U.S.C. § 2000e-5(f)(1) (2008). A plaintiff's EEOC charge defines the scope of the subsequent right to sue in federal court. Put another way, "[a] Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) *cert. denied* 519 U.S. 811 (1996). In short, a "court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Id.* And, where a plaintiff fails to exhaust his administrative remedies, "[d]ismissal results." *Mianegaz v. Hyatt Corp.*, 319 F. Supp. 2d 13, 17 (D.D.C. 2004) (Urbina, J.) (dismissing ADEA termination claim where plaintiff failed to include claim in his charge of discrimination).

In his Complaint, Plaintiff alleges that he "timely filed a charge of discrimination … in which Plaintiff alleged that he had been subjected to racial discrimination during his employment

with Defendant." *See* Compl. at ¶ 15. Plaintiff, in fact, did file a Charge of Discrimination with

the D.C. Office of Human Rights on or about August 22, 2006. *See* Ex. E, Plaintiff's Charge of

Discrimination. The narrative section of Plaintiff's Charge of Discrimination, in relevant part,

explicitly states:

> I believe that I have been discriminated against on the basis of my race (Black) in
> the terms, conditions and privileges of my employment because:
>
> On February 2, 2006, I submitted an on-line application for the Director, Training
> and Organizational Development position, which had become vacant. Prior to
> that, when the incumbent had resigned, I volunteered to take lead for the New
> Hire Orientation Program, which was one of the primary responsibilities of the
> Director, Training and Organizational Development. On February 2, 2006, I also
> informed Respondent's Vice President of Human Resources that I was interested
> in and had applied for the position. I later learned from a co-worker that my
> promotion package was on the desk of the Vice President of Human Resources.
> At no time during the promotion process did Respondent contact me regarding the
> position for which I had applied, and I was never even afforded an interview.
>
> I learned through the recruiter that the successful candidate for the Director,
> Training and Organizational Development position (White) had been selected on
> February 28, 2006 — even though he did not officially apply for the position until
> March 7, 2006. Upon information and belief, the successful candidate was less
> qualified for the position than I was. ... I was qualified for the position, but was
> denied an equal opportunity to be fully considered. Furthermore, I believe that
> the denial was based on my race because this was not the only time that
> Respondent has used a discriminatory process to promote its picks. Its current
> Manager, Compensation and Benefits (White) has been promoted on two separate
> occasions when, although Respondent had properly announced the promotion, the
> position was actually reserved for him — no other candidates were considered.
>
> Therefore, I charge Respondent with an unlawful discriminatory act on the basis
> of my race in violation of the DC Human Rights Act of 1977, as amended, and
> Title VII of the Civil Rights Act of 1964, as amended.

*See* Ex. E. Plaintiff alleges that the purported discriminatory actions occurred between February

2, 2006 and February 28, 2006. *See* Ex. E. Given these allegations, Plaintiff's Charge only

contains a single complaint that CNMC failed to promote him on account of his race. *See* Ex. E.

However, in his Complaint, Plaintiff seems to allege that CNMC denied him a promotion, subjected him to intolerable and unbearable conditions, and constructively discharged him on August 14, 2006 because of his race. *See* Compl. at ¶¶ 8-10.[3]  As mentioned before, Plaintiff's Charge of Discrimination only raised the allegedly discriminatory decision to deny him a promotion. *See* Ex. E.  Plaintiff failed to include any allegations that he was subjected to discriminatory working conditions or that he was forced to resign because of those decisions.  In fact, even though Plaintiff filed his Charge of Discrimination on August 22, 2006 — after his purported resignation on August 14, 2006, Plaintiff asserted that the alleged discrimination covered by his Charge of Discrimination occurred between February 2, 2006, when he allegedly applied for a promotion, and February 28, 2006, when another candidate was hired for the position. *See* Ex. E.  Consequently, Plaintiff's Charge of Discrimination does not cover the discrimination alleged in his Complaint to have occurred between the denial of the promotion at the end of February and his resignation in August 2006. *See* Compl. at ¶ 10.  In short, Plaintiff's Charge of Discrimination utterly fails to raise issues concerning the alleged intolerable working condition or constructive termination.  As a result, Plaintiff failed to exhaust his administration remedies with respect to such claims, and this Court, therefore, must dismiss Plaintiff's claim. *Park* , 71 F.3d at 909 (holding that plaintiff's hostile environment claims were barred for failure

---

[3] As mentioned previously, Plaintiff also alleges that he suffered an employment-related injury in April 2006 and that CNMC terminated him when it denied him additional recovery time. *See* Compl. at ¶ 1.  CNMC does not believe that this allegation actually pertains to Plaintiff, as the factual allegations contained in Plaintiff's Complaint make no mention of an injury and Plaintiff later alleges that he resigned. *See* Compl. at ¶ 10.  Moreover, CNMC has no record that Plaintiff ever suffered a work-related injury during his employment.  However, even if this claim could be construed to fall within the allegations of Plaintiff's Complaint, Plaintiff failed to exhaust his administrative remedies with respect to this claim, requiring its dismissal as well.

to exhaust administrative remedies where plaintiff filed charge challenging promotion decision but failed to include any factual allegations or claims that could support a hostile environment claim); *Mianegaz*, 319 F. Supp. 2d at 17-18 (dismissing plaintiff's discriminatory termination claim where plaintiff's charge referred only to alleged discrimination in suspensions).

**B.    Plaintiff Cannot Recover The Amount Of Compensatory And Punitive Damages Sought By His Complaint.**

In his Complaint, Plaintiff asks this Court to award him "[c]ompensatory and punitive damages in excess of one million dollars ...." *See* Compl. at p. 5. However, Title VII caps the total amount of compensatory and punitive damages that a plaintiff can recover in a discrimination case based upon the number of persons employed by the employer. 42 U.S.C. § 1981a(b)(3) (2008). Under this cap provision, the most that any plaintiff can recover in compensatory and punitive damages is $300,000.[4] *Id.* By seeking over $1,000,000 in compensatory and punitive damages, Plaintiff seeks over three times the maximum recovery allowed by Title VII. Therefore, Plaintiff's Complaint seeks relief which cannot be received under the explicit statutory provisions of Title VII and should be dismissed as a result.

**C.    Plaintiff's Complaint Was Prematurely Filed With This Court.**

All complaints filed with this Court must contain a short and plain statement of the grounds for the Court's jurisdiction and, if necessary, must allege the satisfaction of any conditions precedent to filing suit. Fed. R. Civ. P. 8(a)(1) (2008); Fed. R. Civ. P. 9(c) (2008).

---

[4] Plaintiff's Complaint contains no allegations concerning the number of persons employed by CNMC, and CNMC makes no admissions concerning the cap amount applicable to it in this case. Instead, CNMC is merely pointing out that Plaintiff's Complaint seeks damages far in excess of the absolute maximum that any plaintiff can receive under Title VII.

Under Title VII, a plaintiff must receive a right-to-sue notice from the EEOC before any

complaint can be filed with a court. 42 U.S.C. § 2000e-5(f)(1) (2008). CNMC, however, is

aware that this Court has held that receipt of a right-to-sue notice during the pendency of a Title

VII suit is sufficient to cure any defects created by the premature filing of a suit. *See, e.g.,*

*Holmes v. PHI Serv. Co.*, 437 F. Supp. 2d 110, 118-19 (D.D.C. 2006).

The present case presents a different scenario from one where a plaintiff merely files suit

before receiving the requisite right-to-sue notice. In his Complaint, Plaintiff specifically alleges

that "[c]onditions precedent to the filing of this suit have been performed or have occurred." *See*

Compl. at ¶15. Plaintiff further alleges that he timely filed his administrative charge and

received a right-to-sue notice from the EEOC.[5] *Id.* However, contrary to Plaintiff's explicit

allegations, Plaintiff had not received his right-to-sue notice from the EEOC at the time his

Complaint was filed on May 23, 2008. Instead, the EEOC did not issue a right-to-sue notice to

Plaintiff until July 28, 2008 — over two months after Plaintiff filed his Complaint. *See* Ex. F,

Dismissal and Notice of Rights.[6] Therefore, Plaintiff's assertions that he had satisfied all

conditions precedent to filing suit and had received his right-to-sue notice were untrue at the time

that Plaintiff filed his Complaint and, therefore, lacked the evidentiary support required for

---

[5] Plaintiff's Complaint actually states that a copy of the right-to-sue letter issued to him is
attached to the Complaint. However, neither the copy of the Complaint served on Defendant nor
the copy of the Complaint posted in the Court's ECF system contain a copy of the right-to-sue as
an exhibit.

[6] Because Plaintiff actually purports to attach a copy to his Complaint through his allegations in
paragraph 15 of the Complaint, this Court may consider the right-to-sue notice in connection
with the present Motion to Dismiss. *Sindram*, 2008 U.S. Dist. LEXIS 61661 at *5 (a court may
consider documents attached as exhibits when deciding a Rule 12(b)(6) motion).

factual contentions set forth in a pleading.  Consequently, CNMC submits that Plaintiff's mis-statement of his entitlement to file suit after receipt of his right-to-sue letter constitutes grounds for dismissal of his Complaint, particularly given the other deficiencies in Plaintiff's Complaint previously discussed.

## CONCLUSION

Plaintiff cannot maintain the claims against CNMC contained in his Complaint.  Plaintiff failed to exhaust his administrative remedies with respect to all of the claims asserted in his Complaint.  Moreover, Plaintiff prematurely filed his Complaint before receipt of a right-to-sue notice, while mis-stating that all of the prerequisites to file his Complaint had been satisfied, and seeks relief in excess of the maximum amount allowed by law.  Therefore, for all the foregoing reasons, CNMC respectfully urges this Court to grant its Motion to Dismiss and to enter an Order dismissing all claims made by Plaintiff against it in his Complaint.

Dated: this 18th day of August, 2008           Respectfully submitted,

By:        /s/ David A. Rosenberg
           David A. Rosenberg
           D.C. Bar No. 433405

           FORD & HARRISON LLP
           1300 19th Street, N.W., Suite 700
           Washington, DC  20036
           Telephone: (202) 719-2000
           Facsimile: (202) 719-2077
           E-mail: drosenberg@fordharrison.com

           Attorneys for Defendant Children's National
           Medical Center

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 18th day of August, 2008, I electronically filed the

foregoing MEMORANDUM IN SUPPORT OF MOTION TO DISMISS  with the Court using

the CM/ECF system which will then send electronic notification of the filing to the following:

> James Q. Butler, Esquire
> 818 18th Street, 6th Floor
> Washington, DC 20006
> Jqbutler1@hotmail.com
> Counsel for Plaintiff

                    /s/ David A. Rosenberg
                    David A. Rosenberg

DC:75407.1

# EXHIBIT A

LEXSEE

**MICHAEL SINDRAM[1], Plaintiff, v. MICHAEL KELLY, Defendant.**

1  The plaintiff is a "serial litigant," *see Sindram v. Circuit City,* Civ. No. 92-2138, 1992 WL 391359, at *2 (D.D.C. Dec. 14, 1992), who has filed numerous duplicative or frivolous actions in this and other courts. The constitutional right of access to the courts is not absolute or unconditional. *In re Green,* 669 F.2d 779, 785 (D.C. Cir. 1981). If a litigant persistently abuses the judicial process by filing repetitive, frivolous lawsuits, "a Court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." *Urban v. United States, et al.,* 768 F.2d 1497, 1500 (D.C. Cir. 1985). In addition to a prior order issued by this Court, *see Sindram v. Saunders,* Civ. Action No. 03-2110, slip op. at 2-3 (D.D.C. Aug. 11, 2004), limiting the filing of additional pleadings by the plaintiff, similar restrictions have been imposed by the Supreme Court, *see In re Michael Sindram,* 498 U.S. 177 (1991), and the District of Columbia Circuit, *see Sindram v. Johnson,* No. 91-7110, 1993 WL 135959 (D.C. Cir. April 20, 1993). And, as a result of an Order issued by another member of this Court in *Sindram v. Saunders,* Civ. No. 03-2110, slip op. at 2-3 (D.D.C. Aug. 11, 2004), the plaintiff had to obtain leave of Court to file this action. November 15, 2006 Order issued by Judge Rosemary Collyer.

**Civil Action No. 06-1952 (RBW)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**2008 U.S. Dist. LEXIS 61661**

**August 13, 2008, Filed**

**CORE TERMS:** laintiff, disability, pro se, public entity', reasonable accommodations, individual capacity, medical expenses, quotation marks, citations omitted, failed to state, official capacity, out-of-pocket, accommodate, verified, construe, amend, rent, Rehabilitation Act, public accommodations, physical impairments, failure to state a claim, factual allegations, cause of action, attempt to amend, denial of benefits, recertification, correspondence, accommodations, disregarded, anticipated

**COUNSEL:** [*1] MICHAEL SINDRAM, Plaintiff, Pro se, Washington, DC.

For MICHAEL KELLY, Defendant: Frederick Arnold Douglas, LEAD ATTORNEY, Robert Lee Dillard, Jr., DOUGLAS & BOYKIN, PLLC, Washington, DC.

**JUDGES:** Reggie B. Walton, United States District Judge.

**OPINION BY:** Reggie B. Walton

**OPINION**

***MEMORANDUM OPINION***

**I. Background**

On November 15, 2006, the plaintiff, proceeding *pro se* filed [2] this action alleging violations of Title II of the Americans with Disabilities Act ("ADA"), *42 U.S.C. §§ 12131-12134 (2000)*. Complaint ("Compl."). In this action, the plaintiff alleges that he is "an individual with a disability [and is ]protected under [the ADA], *42 U.S.C. §§ 12101-12213,* and specifically under Title II of the ADA. . . ." *Id.* P 3. The plaintiff brings this suit against the "[d]efendant . . .[, Michael Kelly,] [E]xecutive [D]irector of [District of Columbia] Housing Authority ("DCHA"), the 'public entity' under Title II of the ADA, *42 U.S.C. 12131(1)*[.]" *Id.* The plaintiff contends that as the Executive Director of the DCHA, the defendant is "required to ensure that no 'qualified individual with a disability shall, on the basis of [a] disability, be excluded

Page 1

from participation in or be denied benefits of the services, programs, or [*2] activities of a public entity.' *Id.* However, the plaintiff alleges that "there were no modifications made to any [District of Columbia Housing Authority ("DCHA")] procedures to accommodate [the] [p]laintiff's mental impairment based on his diagnosed organic mental disorder and/or physical impairments based on his diagnosed osteoarthritis in both knees and spinal condition." Compl. PP 2, 4. Specifically, the plaintiff alleges that the defendant has disregarded both documentation filed by the plaintiff in support of his mental and physical impairments over the years and the requests that he has made relating to his disability, including, but not limited to, (1) the "[p]laintiff's request for ADA reasonable accommodations regarding minimizing [his] waiting time to testify at [ ] DCHA Board of Commissioner's monthly meeting[s]", *id.* P 4, (2) his request for "assistance with completing complex DCHA recertification documents", *id.,* and (3) presumably his request to have his actual and anticipated out-of-pocket medical expenses verified in order to offset his rent, *id.* In addition, the plaintiff contends that instead of providing the plaintiff with reasonable accommodations, the "defendant [*3] . . . required his subordinates under [the] doctrine of respondeat superior to have additional correspondence sent to [the] [p]laintiff as a precautionary measure to insulate [the] defendant from further liability, [and] not to assist [the] [p]laintiff with entitled requested ADA reasonable public accommodations." ³ *Id.* The plaintiff seeks to hold the defendant responsible for the alleged ADA violations and request that he be awarded over $ 950,000 in compensatory damages, $ 800,000 in punitive damages, and "[s]uch other and further relief as [the] Court [deems] just and proper. *Id.* at 3-4.

2    The Court construes a filing made by the plaintiff entitled "Leave to File Verified Complaint," Docket Entry Number 1, as his complaint in this action. On November 15, 2006, the plaintiff was granted leave of Court to file his Verified Complaint. November 15, 2006 Order.

3  The plaintiff also asserts that "[i]n addition to denying [the] [p]laintiff his requested entitled reasonable accommodations, [the] defendant had [the] [p]laintiff detained, arrested, and barred from his office. Compl. P 7.

Currently before the Court is the defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) [*4] (failure to state a claim upon which relief may be granted.) Defendant's Motion to Dismiss ("Def.'s Mot."). ⁴ Specifically, the defendant asserts that the plaintiff fails to state a claim upon which relief can be granted because the defendant is an individual who cannot be sued for an alleged violation of Title II of the ADA. *Id.* at 4.

4  The following document has also been filed in connection with the defendant's motion: the plaintiff's Opposition to Defendant Michael Kelly's Motion to Dismiss Complaint ("Pl's Op-p'n").

## II. Standards of Review

To survive a motion to dismiss a complaint for failure to state a claim upon which relief can be granted made pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must make sufficiently detailed factual allegations in his complaint "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* U.S. , , 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007). In evaluating a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus,* U.S. , , 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (internal quotation marks and citations omitted), and "grant the plaintiff [*5] the benefit of all reasonable inferences that can be derived from the facts alleged," *Trudeau v. FTC,* 372 U.S. App. D.C. 335, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citations omitted). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief [in his complaint] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* U.S. at , 127 S. Ct. at 1959 (internal quotation marks and brackets omitted). Moreover, the Court need not accept inferences that are unsupported by the facts set forth in the complaint or "legal conclusion[s] couched as . . . factual allegation[s]." *Trudeau,* 456 F.3d at 193 (internal quotation marks and citations omitted). For the purposes of a Rule 12(b)(6) motion, the Court may only consider the facts alleged in the complaint, any documents attached as exhibits, and matters about which the Court may take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.,* 326 U.S. App. D.C. 67, 117 F.3d 621, 624-25 (D.C. Cir. 1997). Thus, factual allegations in memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts contained in the briefs [*6] contradict those alleged in the complaint. *Henthorn v. Dep't of Navy,* 308 U.S. App. D.C. 36, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

## III. Legal Analysis

As noted above, the defendant requests that the Court dismiss the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because the

defendant is an individual who cannot be sued for an alleged violation of Title II of the ADA. Def.'s Mot. at 4. Specifically, the defendant contends that the plaintiff's complaint must be "dismissed because the statute does not provide relief against Michael Kelly as an individual." *Id.* at 4. In opposition, the plaintiff asserts that "defendant Kelly adamantly fail[ed] to reasonably accommodate [the] [p]laintiff but also unconstitutionally increased [the] [p]laintiff's rent without offsetting out-of-pocket medical expenses as required by law." Pl.'s Opp'n at 1. In addition, the plaintiff now asserts in his opposition for the first time that (1) "[d]efendant Kelly continues to violate [the] [p]laintiff's constitutionally-guaranteed equal rights under the law as contained [*7] in 42 U.S.C. §1981," *id.* at 2, and (2) that he is "entitled to maintain his weighty meritorious cause of action against defendant Kelly cognizable under 42 U.S.C. §1983," *id.*[5]

> 5   It does not appear that the plaintiff is attempting to amend his complaint with these new allegations, as his submission is titled as his Opposition to Defendant Michael Kelly's Motion to Dismiss Complaint. Accordingly, the Court does not construe the plaintiff's submission as an attempt to amend his complaint. The Court reaches this conclusion given the plaintiff's familiarity with the judicial system, *see* footnote 1, *supra*, and the circumstances under which he made his filing following the filing of the defendant's dismissal motion. Moreover, even if the Court construed the submission as an attempt to amend the complaint, and even though a District Court should freely grant leave to amend a complaint "[i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc," *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *see also Atchinson v. District of Columbia*, 315 U.S. App. D.C. 318, 73 F.3d 418, 425 (D.C. Cir. 1996), [*8] here, there is ample reason not to permit the amendment. Not only would the defendant be prejudiced by having to expend additional resources to respond to the amendment, but permitting the amendment would afford the plaintiff a mechanism to avoid the August 11, 2004, prohibition in Civil Action No. 03-2110 (by asserting new theories of liability under the guise of a mere amendment), which precludes him from filing additional lawsuits without leave of court. Accordingly, assuming the plaintiff is attempting to

amend his complaint, such action will not be permitted.

Courts in this Circuit have interpreted the Supreme Court's instruction in *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), that the complaint of a *pro se* plaintiff be held to "less stringent standards than formal pleadings drafted by lawyers," to equally apply to all filings submitted by *pro se* litigants. *See, e.g. Richardson v. United States* 338 U.S. App. D.C. 265, 193 F.3d 545, 548 (D.C. Cir. 1999) (holding that "[c]ourts must construe *pro se* filings liberally") (citing *Haines*, 404 U.S. at 520); *Voinche v. FBI*, 412 F. Supp. 2d 60, 70 (D.D.C. 2006) (observing that "[t]his Court gives *pro se* parties the benefit of the doubt and may ignore some technical [*9] shortcomings of their filings" and applying the *Haines* rule to a plaintiff's summary judgment motion) (citing *Haines*, 404 U.S. at 520); *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005) (Walton, J.) (holding that the Court "must take pains to protect the rights of *pro se* parties against the consequences of technical errors") (citing *Haines*, 404 U.S. at 520). Despite this leniency, a *pro se* plaintiff's complaint "must at least meet a minimal standard" of what pleadings must entail. *Price v. Phoenix Home Life Ins. Co.*, 44 F. Supp. 2d 28, 31 (D.D.C. 1999) (citing *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 378-79 (7th Cir. 1988)). Therefore, although *pro se* pleadings are to be read liberally, a *pro se* litigant, like any other litigant, must comply with the Federal Rules of Civil Procedure. *See McCreary v. Heath*, No. 04-00623, 2005 U.S. Dist. LEXIS 7986, 2005 WL 975736, at *1 (D.D.C. April 22, 2005); *Jarrell v. Tisch*, 656 F.Supp. 237, 239 (D.D.C. 1987).

Here, the plaintiff has failed to state a claim upon which relief may be granted for several reasons. First, Title II of the ADA does not permit lawsuits against individuals. And, the plaintiff specifically requests that this Court find "defendant Michael [*10] Kelly liable for all injuries, damages, and violations suffered by him, and that judgment be entered against defendant Michael Kelly jointly, severally, collectively, and individually . . . ." Compl. at 3. The ADA defines the term "public entity" as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *See* 42 U.S.C. § 12131(1)(A)-(B). Further, existing legal authority has concluded that Title II of the ADA does not provide for individual capacity suits. *See Williams v. McLemore*, 247 Fed. Appx. 1, 2007 WL 1748146, at *6 (6th Cir. 2007) ("the ADA does not provide for personal liability for defendants sued in their individual capacities."); *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as Garcia is suing the individual defendants in their individual capacities, nei-

ther Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits . . ."); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (finding that commissioners may not be sued in their individual capacities under Title II of the [*11] ADA because it affords disabled individuals redress for discrimination by a "public entity" and that term, as it is defined within the statute, does not include individuals.); *Shebby v. Adams*, No. 03-06487, 2007 U.S. Dist. LEXIS 32290, 2007 WL 1302744, at *8 (E.D.Cal. May 2, 2007) (individuals cannot be personally sued under Title II of the ADA); *Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 557 (D.N.J. 2000) (individual defendants cannot be held liable for violations of Title II of the ADA and § 504 of the Rehabilitation Act); *Montez v. Romer*, 32 F. Supp. 2d 1235, 1240-41 (D.Colo. 1999) (defendants in their individual capacities are not properly subject to suit under Title II of the ADA.). Thus, it is abundantly clear that defendant Kelly cannot be held liable in his personal capacity under Title II of the ADA. Accordingly, the plaintiff has failed to state an ADA claim against defendant Kelly upon which relief may be granted.

Second, to the extent that the plaintiff alleges violations against defendant Kelly in his official capacity, or DCHA, the Court finds, *sua sponte,* that the plaintiff has also failed to state a claim upon which relief may be granted against the defendant in his official [*12] capacity or DCHA for two reasons. First, although the plaintiff alleges that he is disabled, he has not alleged any facts demonstrating that he was excluded from participating in or denied the benefits of the services, programs, or activities of DCHA because of his disability. All the plaintiff does is make vague assertions of the need for accommodations without specifying what accommodations he needs, were requested, and were denied. [6] Specifically, the plaintiff only vaguely provides examples of ADA reasonable accommodations that he allegedly requested such as: (1) his request for reduced waiting time for him to testify at DCHA board of commissioners' monthly meetings, (2) his request for assistance in completing complex DCHA recertification documents, and (3) his request for the DCHA to verify his actual and anticipated out-of-pocket medical expenses in order to offset the portion of rent he is obligated to pay. Pl's Opp'n at 2. To prove a public program or service violates Title II of the ADA, a plaintiff must show that:

> (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs [*13] or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits,

or discrimination was by reason of his disability.

*Weinreich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976, 978 (9th Cir. 1997); *see also Atkins v. County of Orange*, 251 F.Supp.2d 1225 (S.D.N.Y. 2003) (applying the same standard); *McDonald v. Commonwealth of Massachusetts*, 901 F.Supp. 471, 478 (D.Mass. 1995) (applying the same standard). Here, the plaintiff's assertions are insufficient to allege an ADA violation because he fails to assert (1) how the DCHA's failure to address his alleged requests amount to the exclusion or denial of benefits, services, programs, or activities of a public entity under Title II of the ADA, (2) how such requests were related to his disability, (3) or how the denials were based on his disability.

> 6  Although the plaintiff cites to exhibits 6 and 7 in his opposition, allegedly his requests for reasonable accommodations and verification of his medical expenses, these documents were not filed with his pleadings. Pl's Opp'n at 2.

Third, the plaintiff does not provide any supporting proof regarding his assertions [*14] (1) that the defendant retaliated against him by allegedly "set[ting] out to satisfy an extra-judicial claim instituted as a private matter to achieve an end unintended by law and in fact having had that intended effect not only to refuse [the] [p]laintiff his ADA reasonable accommodations but also to make [the] [p]laintiff become homeless," Compl. P 4, or (2) that the defendant required his subordinates to send correspondence to the plaintiff in order to not assist the plaintiff with requested ADA reasonable public accommodations. *Id.* Instead, the plaintiff merely asserts that he was not given special treatment and that his requests for ADA reasonable accommodations were disregarded. Compl. P 4. This is inadequate, and accordingly, this Court concludes that the plaintiff has not adequately asserted a failure to accommodate claim under Title II of the ADA against defendant Kelly in his official capacity or against the DCHA.

## IV. Conclusion

For the reasons set forth above, the defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) must be **Granted.** Accordingly, this action must be dismissed. [7]

> 7  Also pending before the Court are the plaintiff's Motion for Judgement [*15] on Pleadings and for Related Relief (requesting a hearing and judgment in his favor on the defendant's motion

2008 U.S. Dist. LEXIS 61661, *

to dismiss). Since the Court is granting the defendant's Motion to Dismiss, the plaintiff's pending motion is **DENIED** as moot. An order consistent with the Court's rulings in this Memorandum Opinion has been issued contemporaneously with this opinion.

**SO ORDERED.**

/s/

Reggie B. Walton

United States District Judge

# EXHIBIT B

LEXSEE

JAMES H. TURNER, Plaintiff, vs. ALTIVITY PACKAGING, L.L.C., Defendant.

No. 4:07-CV-1642 (CEJ)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
MISSOURI, EASTERN DIVISION

2008 U.S. Dist. LEXIS 1109

January 7, 2008, Decided
January 7, 2008, Filed

**CORE TERMS:** plant, public record, summary judgment, matters outside, failure to state a claim, administrative charge, factual allegations, judicial notice, discriminatory conduct, successor liability, acquisition, converted, occurring, successor, printing, untimely, hostile, acquire, notice, heart attack

**COUNSEL:** [*1] For James H. Turner, Plaintiff: Melvin L. Raymond, LEAD ATTORNEY, WILSON AND ASSOCIATES, St. Louis, MO.

For Altivity Packaging, LLC, a limited liability company, Defendant: Ronald K. Fisher, LEAD ATTORNEY, HARRIS AND DOWELL, Chesterfield, MO.

**JUDGES:** CAROL E. JACKSON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CAROL E. JACKSON

**OPINION**

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant Altivity Packaging, LLC, to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Plaintiff has not filed a response to the motion and the time allowed for doing so has expired.

Plaintiff James H. Turner was employed at a printing plant operated by Smurfit-Stone Container Corporation; defendant Altivity Packaging, LLC, subsequently acquired the plant. Plaintiff alleges that between April 2005 and March 2006 he was subjected to disparate treatment and a hostile environment based on his race

and age. He asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., and 42 U.S.C. § 1981. Defendant Altivity asserts that it did not acquire the printing plant [*2] until June 30, 2006, and thus was not plaintiff's employer at the time of the alleged conduct. Defendant asks the Court to dismiss all of plaintiff's claims or, in the alternative, to strike certain allegations as untimely raised in plaintiff's administrative charge of discrimination.

**I. Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, U.S. , 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (May 21, 2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to [*3] present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. See also id. at 1969 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), "has earned its re-

tirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Defendant has submitted affidavits, plaintiff's charge of discrimination, and other documentary evidence in support of its motion to dismiss. The inclusion of matters outside the pleadings may convert a Rule 12(b)(6) motion into one for summary judgment under Rule 56. Rule 12(d). However, "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional materials in support of or opposition to the motion." Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999). For example, a dismissal motion is not converted where the court does not rely on the additional materials. Casazza v. Kiser, 313 F.3d 414, 419 (8th Cir. 2002). In addition, a court may take judicial notice of items [*4] in the public record without treating a Rule 12(b)(6) motion as one for summary judgment. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007), citing Papasan v. Allain, 478 U.S. 265, 269 n.1, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986). In this instance, the Court will not consider the affidavits submitted by defendant in support of its dismissal motion, as they are matters outside the pleadings. Corporate filings with the Missouri Secretary of State and plaintiff's charge of discrimination are public records, however, of which the Court will take judicial notice. See Faibisch v. University of Minnesota, 304 F.3d 797, 803-04 (8th Cir. 2002) (EEOC charge is public record).

## II. Background

Plaintiff is an African-American man born in 1938. He states in his complaint that he began his employment with "Altivity Packaging, LLC, formerly Smurfit-Stone Container Corporation" in 1994. On April 5 and April 12, 2005, he received written warnings for substandard job performance; he received disciplinary layoffs on April 21, 2005 (three days) and on January 18, 2006 (five days). On March 22, 2006, plaintiff was demoted to a lower-paying position. Plaintiff alleges that supervisors created a hostile environment by subjecting him to increased [*5] monitoring, failing to provide him with instruction and assistance, and denying him the opportunity to take breaks. Similarly-situated white employees, some of whom were substantially younger than plaintiff, were not subject to the same treatment. Plaintiff asserts that his employer's actions caused him emotional distress and mental anguish that contributed to the heart attack he suffered on March 30, 2006. Plaintiff's administrative charge of discrimination was limited to discriminatory conduct occurring between March 2005 and March 2006;

plaintiff stated in his charge that he did not return to work after his heart attack.

## III. Discussion

Defendant Altivity asserts that it did not acquire the plant at which plaintiff worked until after the alleged discrimination ended and that it cannot be held liable for conduct in which it had no involvement. Public records filed with the Missouri Secretary of State establish that "Bluegrass Container Company, LLC," formed in Delaware on May 1, 2006, and registered to conduct business in Missouri on June 19, 2006. On September 14, 2006, Bluegrass amended its registration to reflect its change of name to Altivity Packaging, LLC. There is no indication [*6] in the public record that Altivity or Bluegrass Container Company were present in the State of Missouri before June 2006. The discriminatory conduct for which plaintiff seeks redress ceased in March 2006 and therefore Altivity was not plaintiff's employer at the time of the alleged discrimination. Plaintiff's EEOC charge was not on file at the time Altivity acquired the plant from plaintiff's employer and there is no allegation that Altivity had actual notice of the alleged discrimination. Thus, plaintiff cannot proceed against Altivity on the theory of successor liability. See Dominguez v. Hotel, Motel, Restaurant & Misc. Bartenders Union, Loc. No. 64, 674 F.2d 732, 733 (8th Cir. 1982) (successor corporation not liable for alleged harassment because it did not have knowledge of pending EEOC charge at time of acquisition); Carver v. Waste Connections of TN, Inc., 2006 U.S. Dist. LEXIS 7881, 2006 WL 270286 *6-7 (E.D. Tenn. 2006); Dybala v. Landau and Heyman, Inc., 1997 U.S. Dist. LEXIS 3773 , 1997 WL 162846 *3-4 (N.D. Ill. 1997) (elements of successor liability include, inter alia, whether successor company had notice of charge or pending lawsuit prior to acquisition). Because the Court concludes that defendant Altivity cannot be liable for [*7] the alleged discrimination, it is not necessary to address Altivity's alternative argument that plaintiff's EEOC charge was untimely filed with respect to events occurring in 2005.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss for failure to state a claim [Doc. # 3] is **granted.**

/s/ Carol E. Jackson

CAROL E. JACKSON

UNITED STATES DISTRICT JUDGE

Dated this 7th day of January, 2008.

# EXHIBIT C

LEXSEE



Analysis
As of: Aug 18, 2008

**Liaosheng Zhang, Plaintiff, vs. Honeywell International Inc., a Delaware corporation, et al., Defendant.**

**No. 06-1181-PHX-MHM**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

**2007 U.S. Dist. LEXIS 56154**

**July 31, 2007, Decided**
**August 1, 2007, Filed**

**SUBSEQUENT HISTORY:** Related proceeding at Zhang v. China Gate, Inc., 2007 U.S. Dist. LEXIS 66642 (W.D. Wash., Sept. 7, 2007)
Motion to strike granted by Liaosheng Zhang v. Honeywell Int'l, 2008 U.S. Dist. LEXIS 50182 (D. Ariz., June 27, 2008)

**PRIOR HISTORY:** Zhang v. Honeywell Int'l, Inc., 2006 U.S. Dist. LEXIS 84998 (D. Ariz., Nov. 16, 2006)

**CORE TERMS:** retaliation, harassment, work environment, hostile, administrative remedies, disability, visa, national origin, exhaustion, exhaust, judicial notice, failed to exhaust, gender, termination, severance, package, filled, renew, box, subject matter jurisdiction, basis of race, jurisdiction to hear, sexual harassment claim, asserting, redundant, claimant's, notice, grow, sex, discriminated

**COUNSEL:** [*1] Liaosheng Zhang, Plaintiff, Pro se, Seattle, WA.

For Honeywell International, Inc., a Delaware corporation, Defendant: Pavneet Singh Uppal, LEAD ATTORNEY, Nonnie L Shivers, Shayna Helene Balch, Ogletree Deakins Nash Smoak & Stewart PC, Phoenix, AZ.

**JUDGES:** Mary H. Murguia, United States District Judge.

**OPINION BY:** Mary H. Murguia

**OPINION**

**ORDER**

Pending before the Court are Defendant's Partial Motion to Dismiss the retaliation and harassment/hostile work environment claims from Plaintiff's Amended Complaint (Doc. 16) and Defendant's Motion to Strike Plaintiff's "Response to Defendant's Reply in Support of [Defendant's Partial] Motion to Dismiss Case" (Doc. 23). Defendant filed a Partial Motion to Dismiss Plaintiff's claims of retaliation and harassment/hostile work environment on December 19, 2006. Plaintiff filed a Response, Defendant filed a Reply, and Plaintiff filed a Response to Defendant's Reply. Defendant then filed a Motion to Strike Plaintiff's Response to Defendant's Reply. The Court has considered all the papers submitted and, finding oral argument unnecessary, issues the following Order.

**BACKGROUND**

Plaintiff Liaosheng Zhang ("Plaintiff") was employed by Honeywell International, Inc., ("Honeywell" or "Defendant") [*2] from 1998 through 2005. Amend. Compl. P 4.1. This action arises out of Honeywell's alleged termination of Plaintiff's employment on April 2, 2005. Amend. Compl. P 4.5. Plaintiff asserts that her termination was due to her gender, race, national origin, disability, and age. Amend. Compl. P 4.4. Plaintiff is an Asian woman of Chinese national origin who suffers from a disability and was 47 years old at the time of her separation from Honeywell. Amend. Compl. P 4.3. Plaintiff also asserts that she was not given a severance

package that she was entitled to. EEOC Charge, at 1. Since Plaintiff's alleged termination, Plaintiff has applied for over twenty other jobs with Honeywell but Honeywell has not hired her for any of these positions, despite Plaintiff's claims of qualification for the jobs sought. Amend. Compl. P 4.6 & EEOC Charge, at 1. Defendant has asserted that Plaintiff was no longer able to work due to the expiration of her visa and the end of her authorization to work in the United States. Def.'s Response, at 1-2.

Plaintiff filed an Equal Employment Opportunity Commission Charge ("EEOC") on November 18, 2005. In her EEOC charge, Plaintiff alleged that Honeywell's human resources [*3] department was "not going to renew [her] visa," and that "as a result [she] was laid off on or about April 1, 2005 and was not given a severance package." EEOC Charge of Discrimination. [1] Plaintiff's EEOC Charge further states, "I believe I have been discriminated against because of my race, Asian; sex, female; national origin, Chinese; age, 47; and disability/perceived disability." Def.'s Partial Motion to Dismiss ("MTD"), Exh. 1. On February 1, 2006, the EEOC issued a no cause finding and right to sue letter. Def.'s MTD, Exh. 2.

> 1   The Court takes judicial notice of the EEOC Charge of Discrimination, the EEOC Intake Questionnaire, and the EEOC Right to Sue Notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (a court may take judicial notice of records and reports of administrative bodies without converting a motion to dismiss into one for summary judgment), abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991); and Gallo v. Board of Regents of Univ. of Cal., 916 F.Supp. 1005, 1007 (S.D.Cal. 1995) (a court may consider EEOC charge and right-to-sue letter in deciding a motion to dismiss either as a matter attached [*4] to the complaint or as records subject to judicial notice).

Plaintiff, now *pro se,* commenced this lawsuit on April 27, 2006. On December 4, 2006, Plaintiff filed an Amended Complaint alleging that Honeywell violated her civil rights under 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Americans with Disabilities Act ("ADEA") by discriminating against her on the basis of race, national origin, gender, disability, and age. Plaintiff alleges that the discrimination took place during the time that she worked for Honeywell and afterward when Honeywell did not hire Plaintiff for positions that she applied and was qualified.

On December 19, 2006, Defendant filed a Partial Motion to Dismiss Plaintiff's claims of retaliation, and harassment/hostile work environment, asserting that Plaintiff had failed to exhaust her administrative remedies with regard to those claims. Plaintiff filed a Response, and Defendant filed a Reply.

Plaintiff then filed a Response to Defendant's Reply, which Defendants have moved to strike. The Court finds Plaintiff's Response to Defendant's Reply, filed without leave of the Court, to be an inappropriately filed surreply. See Local Rule 7.1. The Court hereby grants Defendant's [*5] Motion to Strike. Plaintiff's Response to Defendant's Reply is hereby stricken from the record.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e). These rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

In her Amended Compliant, Plaintiff has asserted that Defendant discriminated against her on [*6] the basis of race, national origin, gender, disability, and age in violation of Title VII and the ADEA. Defendant argues that Plaintiff did not exhaust her administrative remedies with regard to her claims of retaliation and harassment/hostile work environment.

To establish federal subject matter jurisdiction, Plaintiff was required to exhaust her EEOC administrative remedies before seeking federal adjudication of her claims. See Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990). "[T]he jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation." Id. (citing Green v. Los Angeles County Superintendent of Sch., 883 F.2d 1472, 1476 (9th Cir. 1989)). Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are "'like or reasonably related to the allegations contained in the EEOC charge.'" Brown v. Puget Sound

Elec. Apprenticeship & Training Trust, 732 F.2d 726, 729 (9th Cir. 1984) (quoting Oubichon v. Northern Am. Rockwell Corp., 482 F.2d 569, 571 (9th Cir. 1973)), cert. denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985); accord Stache v. International Union of Brick-layers and Allied Craftsmen, 852 F.2d 1231, 1234 (9th Cir. 1988).

## I. [*7] RETALIATION

Defendant asserts that Plaintiff did not exhaust her administrative remedies for her retaliation claim because she did not include allegations of retaliation in her EEOC Charge and, therefore, her retaliation claim should be dismissed. Defendant attached Plaintiff's EEOC Charge to its Motion. Retaliation is not mentioned in the EEOC Charge, nor is the retaliation box checked.

Plaintiff responded by stating that the EEOC representative, rather than Plaintiff herself, filled out the EEOC Charge document and, therefore, it would be inappropriate to penalized Plaintiff for the lack of discussion of retaliation and for the retaliation box not being checked. Plaintiff urges the Court to consider instead the EEOC Intake Questionnaire that she personally filled out. However, similar to the EEOC Charge, the EEOC Intake Questionnaire lacks any discussion of retaliation and, again, the retaliation box is not checked.

The Ninth Circuit Court of Appeals has instructed that Title VII actions should be "neither interpreted too technically or applied too mechanically," a plaintiff must "describe the facts and the legal theory with sufficient clarity to notify the agency." Ong v. Cleland, 642 F.2d 316, 319 (9th Cir. 1981); [*8] accord Greenlaw v. Garrett, 59 F.3d 994, 999 (9th Cir. 1995). If the claims are not within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," they must be dismissed for failure to exhaust administrative remedies. Id. (quoting Kaplan v. Int'l Alliance of Theatrical and Stage Employees, 525 F.2d 1354, 1359 (9th Cir. 1975)); accord Shah v. Mt. Zion Hosp., 642 F.2d 268, 271 (9th Cir. 1981).

Here, Plaintiff did not include a description of retaliation against her by Defendant in a manner that would alert the EEOC of such a charge. This is evidenced not only by the absence of a discussion of retaliation in the EEOC Charge, but also by its absence from the EEOC Intake Questionnaire that Plaintiff personally filled out at the time the EEOC Charge was completed. Without some sort of allegation of retaliation in her EEOC Charge or Intake Questionnaire, such an allegation is not reasonably expected to grow out of the charge of discrimination, nor was the EEOC made aware of any claims of retaliation by Plaintiff in her EEOC Complaint. Therefore, Plaintiff failed to exhaust her administrative

remedies as to her retaliation cause of [*9] action. Because of this, the Court lacks subject matter jurisdiction over Plaintiff's retaliation claim.

Pursuant to 29 U.S.C. § 626(d)(2), charges of retaliation may only be asserted for three hundred days from the time of the alleged wrongful act. After three hundred days, the claim is time barred. Id. Over three hundred days have passed since Plaintiff filed her November 12, 2005 EEOC charge, upon which Plaintiff has asserted that her retaliation claims rest. Logically, the alleged retaliation acts took place over three hundred days ago. Thus, Plaintiff is time-barred from asserting the retaliation claim now. Thus, Defendant's Motion to Dismiss Plaintiff's retaliation claim is granted. Plaintiff's retaliation claim is dismissed with prejudice.

## II.    HARASSMENT/HOSTILE    WORK ENVIRONMENT

Defendant asserts that Plaintiff failed to exhaust her administrative remedies with regard to her claims for harassment and hostile work environment by not including any facts related thereto in her EEOC charge. Defendant also asserts that Plaintiff's administrative allegations of discrimination are wholly unlike and unrelated to any claim of harassment, therefore, Defendant asserts, that Plaintiff's allegations [*10] of discrimination in her EEOC charge are insufficient to satisfy exhaustion for a hostile work environment or harassment claim. See Ismail v. University of Portland, 1999 U.S. Dist. LEXIS 16823, 1999 WL 732590, *6 (D. Or. Sept. 21, 1999) (ruling that because the plaintiff's sexual harassment claim was not like or reasonably related to her original gender-based discrimination charge filed with the EEOC, the court lacked jurisdiction to hear the plaintiff's sexual harassment claim).

When an employee seeks judicial relief for incidents not listed in her original EEOC charge, a court may assume jurisdiction over the new claims if they are "like or reasonably related to the allegations of the EEOC charge." Oubichon, 482 F.2d at 571. "Where claims are not so closely related that agency action would be redundant, the EEOC must be afforded an opportunity to consider disputes before federal suits are initiated." Brown, 732 F.2d 726 (emphasis in original) (finding that an administrative charge limited to claims of disparate impact discrimination does not satisfy the exhaustion requirement for an intentional sex discrimination claim).

Plaintiff does not specifically refer to incidents of harassment or hostile work environment [*11] in either her EEOC Charge or her EEOC Intake Questionnaire. Instead, Plaintiff alleged that Honeywell failed to renew her visa and laid her off without a severance package. Plaintiff states that Honeywell sponsored her work visa

2007 U.S. Dist. LEXIS 56154, *

for six years and then it notified her less than a month before her visa was to expire that it would not assist her in renewing her visa for another year. [2] Plaintiff also provides a list of over twenty positions to which she applied and was qualified, and yet did not attain. The allegations set forth in Plaintiff's EEOC Charge and Intake Questionnaire do not meet the requirement for exhaustion for either a harassment or a hostile work environment claim because Plaintiff did not mention either harassment or hostile work environment in either EEOC document. Furthermore, the allegations Plaintiff set forth in the EEOC documents are not so closely related that agency action would be redundant. Therefore, this Court lacks jurisdiction to hear Plaintiff's harassment or hostile work environment claims due to lack of exhaustion. Accordingly, Plaintiff's claims of harassment and hostile work environment are dismissed.

2    Plaintiff alleges that it takes two to three months [*12] for Immigration and Naturalization Services ("INS") to renew a visa.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Strike Plaintiff's "Response to Defendant's Reply in Support of [Defendant's Partial] Motion to Dismiss Case" (Doc. 23) is granted. The Clerk's Office is directed to strike Plaintiff's "Response to Defendant's Reply in Support of [Defendant's Partial] Motion to Dismiss Case" (Doc. 23).

**IT IS FURTHER ORDERED** that Defendant's Partial Motion to Dismiss (Doc. 16) is granted.

DATED this 31<st> day of July, 2007.

Mary H. Murguia

United States District Judge

# EXHIBIT D

LEXSEE 2001 US DIST LEXIS 18394

**MARILYN RATLIFF, Plaintiff, v. CONAGRA, INC. d/b/a BEATRICE FOODS, INC., and NABISCO BISCUIT, INC., Defendants.**

**CAUSE NO. IP 01-0129-C H/K**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION**

*2001 U.S. Dist. LEXIS 18394*

**October 31, 2001, Decided**

**NOTICE:**     [*1]  NOT FOR PUBLICATION

**DISPOSITION:**     Defendant Nabisco's motion to dismiss was granted. Plaintiff's claims against Nabisco were dismissed with prejudice. Nabisco's *Rule 11* motion was granted.

**COUNSEL:** For RATLIFF, MARILYN, plaintiff: KIMBERLY J BACON, ATTNY AT LAW, INDIANAPOLIS, IN.

For CONAGRA, INC, defendant: T JOSEPH WENDT, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, INDIANAPOLIS, IN.

For NABISCO BUSCUIT, INC., defendant: STEPHEN B MEAD, ROSS & HARDIES, CHICAGO, IL.

**JUDGES:** DAVID F. HAMILTON, JUDGE, United States District Court, Southern District of Indiana.

**OPINION BY:** DAVID F. HAMILTON

**OPINION**

ENTRY ON DEFENDANT NABISCO'S MOTION TO DISMISS AND FOR *RULE 11* SANCTIONS

Plaintiff Marilyn Ratliff has sued Conagra, Inc., d/b/a Beatrice Foods, Inc. ("Beatrice") and Nabisco Biscuit, Inc. for allegedly violating the Age Discrimination in Employment Act ("ADEA"), *29 U.S.C. § 621 et seq.*, and Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.*

Defendant Nabisco has moved on two grounds to dismiss the complaint under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* for failure to state a claim upon which relief can be granted. First, Nabisco claims that Ratliff failed to exhaust her administrative remedies under the ADEA and Title VII since it was not named in her charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"). Second, Nabisco asserts that Ratliff failed to allege any actionable wrong by Nabisco because, [*2]  during the time period giving rise to her claims, Ratliff had no employment relationship with Nabisco. Nabisco has also filed a motion pursuant to *Federal Rule of Civil Procedure 11* seeking sanctions for plaintiff's pursuit of claims against it. Nabisco complied with the "warning shot" procedure set forth in *Rule 11(c)(1)(A)*, but Ratliff did not withdraw her claims against Nabisco.

For reasons set forth below, Nabisco's motion to dismiss is granted. Its *Rule 11* motion is also granted, but without monetary sanctions. The court instead orders plaintiff's attorney Kimberly J. Bacon to attend an appropriate continuing legal education program on employment discrimination law.

*Factual Background*

The following facts are taken from Ratliff's complaint and for the purposes of the motion to dismiss are assumed to be true. On January 4, 1993, Ratliff was hired by Nabisco. In May 1997, Ratliff filed a charge of discrimination with the EEOC alleging discrimination by Nabisco under Title VII and the ADEA. On December 19, 1997, Nabisco terminated Ratliff's employment. Upon her discharge, Ratliff filed a second charge of discrimination alleging retaliation. Cplt. PP 7-10.

In August 1998, Beatrice [*3]  purchased Ratliff's employer (presumably, Nabisco, or at least the relevant operations). *Id.*, P 11. On or about December 7, 1999, subsequent to arbitration proceedings, Ratliff was reinstated to her employment with "full benefits." *Id.*, P 12.

Ratliff was reinstated as an employee of Beatrice, not Nabisco, and since her reinstatement, Ratliff has been continuously employed by Beatrice. See *id.*, P 13. While employed by Beatrice, Ratliff alleges, she has been subjected to retaliatory acts "by management previously employed by *Nabisco* and became [sic] employees of *Beatrice.*" *Id.*, P 14 (emphasis in original). For instance, Ratliff states that she "requested defendant's [sic] reimburse back pay and benefits awarded by arbitrator" and "requested arbitrator's clarification of award." *Id.*, P 15. Further, Ratliff alleges that "defendant" (without stating which defendant) refused to retrain her upon her return to work, did not permit her to work overtime or a preferred shift according to her seniority, gave her assignments to younger workers, refused to provide her with a telephone number of the arbitrator, "threatened and jeopardized [her] with discriminatory [*4] discipline," suspended her from work, and denied her unemployment benefits during plant shutdowns. *Id.*, PP 16-17, 23. [1]

> [1]    Although the point is unclear because of her interchangeable use of the term "defendant," Ratliff also appears to claim that Nabisco refuses to honor the terms of her return to work awarded by the arbitrator. For instance, Ratliff states "Plaintiff requested defendant's reimburse back pay and benefits awarded by arbitrator. Plaintiff also requested arbitrator's clarification of award." Compl. P 15. Presumably referring to the arbitration award, Ratliff states: "Defendant's refused to revisit its calculation after plaintiff's counsel submitted plaintiff's position." *Id.*, P 21. Further, Ratliff refers to "defendant's refusal to pay plaintiff," apparently referring also to the arbitration award. *Id.*, P 22.

On or about January 11, 2000, Ratliff filed her third charge of discrimination with the EEOC. She later received a right-to-sue letter and filed this action.

### Discussion

I. [*5] *Standard for Motion to Dismiss under Rule 12(b)(6)*

In ruling on a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)*, the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all inferences in the light most favorable to the plaintiff. See, *e.g.*, *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996); *McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992).

For purposes of the motion, the court determines whether the plaintiff can prove any set of facts consistent with the allegations that would give the plaintiff a right to relief. *Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir. 1997), citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of her claim for relief. *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999). [*6]

A motion to dismiss under *Rule 12(b)(6)* must ordinarily be decided based on the face of the complaint. Ratliff's complaint refers to three charges of discrimination and right-to-sue letters, but none were attached to the complaint. (The complaint alleges that Ratliff's third EEOC charge is attached as Exhibit A. As might be expected from the numerous errors in the complaint, no Exhibit A is attached to the complaint.) In support of its motion to dismiss, Nabisco has submitted copies of the three charges of discrimination and the respective right-to-sue letters.

Consideration of these documents does not require that Nabisco's *Rule 12(b)(6)* motion be converted to a Rule 56 motion for summary judgment. Under *Federal Rule of Civil Procedure 10(c)*, a document attached to a pleading as an exhibit is deemed part of the pleading. *Fed. R. Civ. P. 10(c)*. There is no reason why the same may not be said of a document the complaint says is attached, even if it is not actually attached. The Seventh Circuit has repeatedly approved consideration under *Rule 12(b)(6)* of documents mentioned in the complaint, at least if they are central to the plaintiff's claims. See, *e.g.*, *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) [*7] (affirming dismissal based on document referred to in complaint and central to claim); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (same). Cf. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) (district court erred by considering photographs and police report submitted by parties in deciding *Rule 12(b)(6)* motion, but error was harmless).

This practice has been used for EEOC charges and right-to-sue letters. See, *e.g.*, *Gallo v. Bd. of Regents of the Univ. of Cal.*, 916 F. Supp. 1005, 1007 (S.D. Cal. 1995) (in determining whether the plaintiff filed a timely charge of discrimination with the EEOC, district court stated that it could consider both the EEOC right-to-sue letter and the EEOC charge either as referenced in the complaint or as a public record subject to judicial notice); *Maldonado-Cordero v. AT&T*, 73 F. Supp. 2d 177, 185 (D.P.R. 1999) (same); *Stokes v. Norfolk S. Ry. Co.*, 99 F. Supp. 2d 966, 972-74 (N.D. Ind. 2000) (considering EEOC charge on *Rule 12(b)(6)* motion to dismiss

because claim in lawsuit went beyond scope of EEOC charge). The EEOC [*8] charges and right-to-sue letters are central to Ratliff's claims and are mentioned in her complaint. The court may consider these documents.

## II. *Failure to Exhaust Administrative Remedies*

Under Title VII, *42 U.S.C. § 2000e-5(f)(1)*, and the ADEA, *29 U.S.C. § 626(d)*, a plaintiff may bring a claim against a respondent named in the EEOC charge. *Perkins v. Silverstein, 939 F.2d 463, 471 (7th Cir. 1991)* (Title VII); *Overgard v. Cambridge Book Co., 858 F.2d 371, 374 (7th Cir. 1988)* (ADEA); see generally *Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974).* Conversely, no claim can be brought against a party not named as a respondent in an EEOC charge. The filing requirement is not jurisdictional; it is a defense that operates like a statute of limitations in that it is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982); Gibson v. West, 201 F.3d 990, 993-94 (7th Cir. 2000)* (overruling prior circuit decision treating [*9] requirement as jurisdictional).

Ratliff's lawsuit is based upon her third EEOC charge, which does not name Nabisco as a respondent employer. See Nabisco Second Reply Br., Ex. A. Ratliff argues that she complied with the charge requirement by filing a charge, but she has completely failed to address the issue raised by Nabisco -- she did not name Nabisco as a respondent employer in the charge at issue here. The charge referenced in the complaint (though erroneously not attached to it) shows that Nabisco is entitled to dismissal because Ratliff failed to name it in the third EEOC charge). [2]

    2   The Seventh Circuit recognizes a narrow exception to the general rule if the unnamed party had adequate notice of the charge and an opportunity to participate in the conciliation proceedings, and if strict application of the filing requirement would deprive a plaintiff of redress for a legitimate grievance. *Eggleston v. Chicago Journeymen Plumbers' Local Union NO. 130, 657 F.2d 890, 907 (7th Cir. 1981);* see also *Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 126-27 (7th Cir. 1989).* Ratliff does not argue that she can meet this exception. There is no indication that Nabisco had any chance to participate in the conciliation proceedings on the third EEOC charge.

## [*10] III. *Post-Employment Retaliation*

Nabisco is entitled to dismissal on a second, independent basis. From the face of her complaint, it appears

that Ratliff alleges she is a victim of post-employment retaliation. [3] An employer's acts of retaliation occurring after termination that undermine a former employee's future employment prospects are actionable under Title VII. *42 U.S.C. § 2000e-3; Robinson v. Shell Oil Co., 519 U.S. 337, 345-46, 136 L. Ed. 2d 808, 117 S. Ct. 843 (1997).* To establish liability, a post-employment retaliation plaintiff must demonstrate "an employment impairment that evidences actionable retaliation." *Moreno-Nicholas v. City of Indianapolis, 2000 U.S. Dist. LEXIS 16668,* No. IP 98-1398- C H/G, 2000 WL 1707970, at *4 (S.D. Ind. Oct. 26, 2000), citing *Veprinsky v. Fluor Daniel, Inc., 87 F.3d 881, 891 (7th Cir. 1996);* see also *Nelson v. Upsala College, 51 F.3d 383, 387 (3d Cir. 1995).*

    3   Ratliff's complaint refers to two earlier charges of discrimination filed against Nabisco. The first charge was filed in May 1997. The second charge was filed after Ratliff's December 1997 termination. In its memorandum in support of its motion to dismiss, Nabisco submitted as Exhibit A the two referenced charges. The charge filed in May 1997 (EEOC Charge No. 24091697) was the subject of a right-to-sue letter on February 12, 1998. Similarly, the charge filed in December 1997 (EEOC Charge No. 240980744) was the subject of a right-to-sue letter on February 23, 1998. After review of the Southern District of Indiana's court docket, it is clear Ratliff never filed a complaint within the statutory 90-day period to assert any claims under these two charges. As a result, the two prior charges are not a part of this action and presumably were resolved in arbitration, resulting in Ratliff's return to work with Beatrice before the present action was filed.

[*11] Even if Ratliff had exhausted her administrative remedies against Nabisco, she still would not avoid dismissal because she has not alleged any wrongdoing by Nabisco itself. By her own allegation, Ratliff has not been employed by Nabisco since December 19, 1997, the date of her termination. Cplt. P 9. Further, she alleges that co-defendant Beatrice "purchased [Nabisco] in August 1998." *Id.,* P 11. Thus, when the arbitrator restored her employment on December 7, 1999, she became an employee of Beatrice. *Id.,* P 12. Ratliff's complaint shows that she had no employment relationship with Nabisco after December 19, 1997.

Ratliff claims that upon her return to work at Beatrice, she was subjected to retaliatory acts by management-level personnel previously employed by Nabisco. Cplt. P 14. Assuming for the purposes of the motion to dismiss that Ratliff was subjected to acts of retaliation by

former employees of Nabisco, her claims against Nabisco still fail. In *Moreno-Nicholas*, the plaintiff claimed she was subjected to post-employment retaliation when a former employee of the defendant refused to give a reference for the plaintiff to a prospective employer. Although the court [*12] held that the plaintiff asserted acts constituting retaliation, the court rejected her claim based on the defendant's former employee's actions because he was not an employee or agent of the defendant at the time of the solicitation. *Moreno-Nicholas, 2000 U.S. Dist. LEXIS 16668, 2000 WL 1707970, at *4*. As a result, the court found that the defendant was "not legally responsible for anything [the former employee] did or did not do" in responding to the prospective employer's inquiries. *Id.* The same reasoning applies here. Ratliff alleges that the individuals who took action against her are employed by *Beatrice*, not Nabisco. Ratliff has not alleged any basis for holding Nabisco responsible for their recent conduct.

In her opposition brief filed on August 31, 2001, Ratliff invokes in conclusory terms the doctrine of successor liability. Under the federal successor liability doctrine applicable to Title VII and ADEA claims, a plaintiff may sue a purchaser of the assets of the violator-business if: (1) the successor had notice of the plaintiff's claim before acquisition; and (2) there was a substantial continuity in the operation of the business before and after the sale. *EEOC v. G-K-G, Inc., 39 F.3d 740, 748 (7th Cir. 1994).* [*13] The doctrine is derived from equitable principles, and fairness is the prime consideration in its application. See *Criswell v. Delta Air Lines, Inc., 868 F.2d 1093, 1094 (9th Cir. 1989).* The policy underlying the doctrine is "to protect an employee when the ownership of his employer suddenly changes." *Rojas v. T.K. Communications, Inc., 87 F.3d 745, 750 (5th Cir. 1996).*

The doctrine does not apply here. Ratliff is trying to impose what amounts to "predecessor liability," for which there is no basis in the law. She is attempting to hold Nabisco responsible for actions allegedly taken later by its former employees on behalf of Beatrice. (Also, there is no claim here of any sudden change of ownership causing prejudice to Ratliff. In fact, she did not file her EEOC charge until January 11, 2000, three years after her employment with Nabisco.) Ratliff cannot save her claims against Nabisco by invoking successor liability.

### IV. *Motion for Sanctions*

Nabisco seeks sanctions pursuant to *Federal Rule of Civil Procedure 11* against Ratliff and her counsel for bringing a frivolous claim against Nabisco. *Rule 11(b)* provides two distinct grounds for sanctions: [*14] the "frivolousness clause" and the "improper clause." *Fred A. Smith Lumber Co. v. Edidin, 845 F.2d 750, 752 (7th*

*Cir. 1988).* The "frivolousness clause" requires that the party or the attorney conduct a reasonable inquiry into the facts and the law relevant to the case, while the improper purpose clause ensures that a "motion, pleading, or other document may not be interposed for purposes of delay, harassment, or increasing the costs of litigation." *Id.*

Nabisco invokes the "frivolousness clause," stating that Ratliff's continued pursuit of her claims against Nabisco has been frivolous in light of her failure to have exhausted administrative remedies and her failure to allege any wrongdoing by Nabisco itself (as distinct from its former employees). The weakness of plaintiff's response to the motion to dismiss underscores Nabisco's *Rule 11* arguments. The only additional specific rebuttal to the *Rule 11* motion is an affidavit from Ratliff's attorney, Kimberly Bacon. Attorney Bacon asserts that she attended a mediation with the EEOC in March 2000, that an attorney for Beatrice Foods told her that Nabisco was the proper respondent, and that the EEOC mediator told her [*15] that Nabisco was included in the pending charge. On this record, the court must accept that testimony.

The court assumes for purposes of argument that attorney Bacon could reasonably have relied upon those unexplained assertions when she initially filed the complaint. There might have been some uncertainty about Nabisco's precise status after it sold to Beatrice, and perhaps the EEOC official offered erroneous advice. But attorney Bacon could not have reasonably relied on those assertions in refusing to dismiss Ratliff's claim against Nabisco after she received from Nabisco's counsel the *Rule 11* warning shot setting forth the controlling law.

*Rule 11* does not punish competent and good faith attempts to extend the law. An attorney's signature on a filing certifies that, to the best of her knowledge, information, and belief, "formed after an inquiry reasonable under the circumstances -- . . . (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Fed. R. Civ. P. 11(b)(2).* In response to the motion to dismiss, however, attorney [*16] Bacon has not presented even a colorable argument to excuse the failure to name Nabisco in the EEOC charge in this lawsuit.

On this record, therefore, the continued pursuit of Nabisco, after Nabisco delivered the warning shot, and without any meaningful response to Nabisco's arguments, amounts to a violation of *Rule 11(b)(2).* Accord, *Hansboro v. Northwood Nursing Home, Inc., 151 F.R.D. 95, 97 (N.D. Ind. 1993)* (plaintiff's counsel violated *Rule 11* by pursuing race discrimination claims despite ample

warnings that EEOC charge alleged only sex discrimination); see also *Shelton v. Ernst & Young, LLP, 143 F. Supp. 2d 982, 994 (N.D. Ill. 2001)* (plaintiff's counsel violated *Rule 11* by pursuing time-barred discrimination claims despite ample warning). The violation here was by the attorney rather than her client. A plaintiff in such a case should be able to rely on her attorney for competent professional advice about whether and how to pursue a discrimination claim within the often technical legal rules that apply to such claims.

Nabisco seeks as a sanction its reasonable attorneys' fees and costs incurred in obtaining dismissal of the claim against it. [*17] *Rule 11* sanctions need not be monetary, however. A sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *Fed. R. Civ. P. 11(c)(2)*. The most appropriate sanction in this case is to require attorney Bacon to attend an appropriate continuing legal education program on employment discrimination law no later than March 31, 2002. The court finds no lack of good faith, or good will on the part of attorney Bacon, but a lack of knowledge and training in this sometimes difficult field of the law. See *Fed. R. Civ. P. 11* Advisory Committee Notes for 1993 amendment to subdivision (c) (possible sanctions may include "requiring participation in seminars or other educational programs"). The court believes the combination of a public

finding of a violation of *Rule 11* and the required attendance should be sufficient to deter attorney Bacon and others from similar violations in the future.

*Conclusion*

Plaintiff Ratliff has failed to state a claim against Nabisco upon which relief can be granted. As a result, Nabisco's motion to dismiss is granted, and Ratliff's claims against Nabisco are dismissed with prejudice. [*18] No separate judgment shall issue at this time. Nabisco's *Rule 11* motion is also granted, and attorney Kimberly Bacon shall file with the court in this action as soon as possible, and no later than March 31, 2002, written proof that she has attended a continuing legal education program of at least six hours on employment discrimination, approved for credit by the Indiana Commission for Continuing Legal Education, and taken after the date of this entry.

So ordered.

Date: October 31, 2001

DAVID F. HAMILTON, JUDGE

United States District Court

Southern District of Indiana

# EXHIBIT E

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | 06-383-P(CN) |
| | [X] EEOC | 10C-2006-02942 |

| D.C. Office Of Human Rights | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Larry R. Hudson | (301) 725-4846 | 08-25-1960 |

| Street Address | City, State and ZIP Code |
|---|---|
| 14028 Vista Drive, Apt. 77b, Laurel, MD 20707 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CHILDREN'S HOSPITAL | 500 or More | (202) 884-4550 |

| Street Address | City, State and ZIP Code |
|---|---|
| 111 Michigan Avenue, N.W.,  Washington, DC 20010 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN

[ ] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 02-02-2006     Latest: 02-28-2006

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I believe that I have been discriminated against on the basis of my race (Black) in the terms, conditions and privileges of my employment because:

Respondent hired me as a Senior Human Resources Consultant on October 27, 2003, and I have consistently performed my duties in a satisfactory manner.

On February 2, 2006, I submitted an on-line application for the Director, Training and Organizational Development position, which had become vacant. Prior to that, when the incumbent had resigned, I volunteered to take lead for the New Hire Orientation Program, which was one of the primary responsibilities of the Director, Training and Organizational Development. On February 2, 2006, I also informed Respondent's Vice President of Human Resources that I was interested in and had applied for the position. I later learned from a co-worker that my promotion package was on the desk of the Vice President of Human Resources. At no time during the promotion process did Respondent contact me regarding the position for which I had applied, and I was never even afforded an interview.

I learned through the recruiter that the successful candidate for the Director, Training and Organizational Development position (White) had been selected on February 28, 2006 – even though he did not officially apply for the position until March 7, 2006. Upon information and belief, the successful candidate was less qualified for the position than I was. I have two Master degrees, one in Administration from Central Michigan University and one in Human Resources Management and Development with a concentration in Organizational Development from Chapman University. I have been an adjunct professor at Park University since 2001 and I teach Organizational Development and Change Management along with several other Human Resources disciplines. I was qualified for the position, but was denied an equal opportunity to be fully considered. Furthermore, I believe that the denial was based on my race because this was not the only time that Respondent has used a discriminatory process to promote its picks. Its current Manager, Compensation and Benefits (White) has been promoted on two separate occasions when, although Respondent had properly announced the promotion, the position was actually reserved for him – no other candidates were considered.

Therefore, I charge Respondent with an unlawful discriminatory act on the basis of my race in violation of the

DC Human Rights Act of 1977, as amended, and Title VII of the Civil Rights Act of 1964, as amended. I have not commenced any action, civil, criminal or administrative, based on the above allegations, other than the following: CROSS FILED WITH THE EEOC.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements<br><br>**Charles Teixeira** |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT **Charles Teixeira**<br>**Notary Public, District of Columbia**<br>**My Commission Expires 02/28/2011** |
| 8/22/06 _____ _Larry R. ___ Jr._<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br>**Aug 22, 2006** |

# EXHIBIT F

EEOC Form 161 (2/08)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Larry R. Hudson
14028 Vista Drive, Apt. 77b
Laurel, MD 20707

From: Washington Field Office
1801 L Street, N.W.
Suite 100
Washington, DC 20507

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 10C-2006-02942 | David Gonzalez, State & Local Coordinator | (202) 419-0714 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

Dana R Hutter

Dana Hutter,
Director

JUL 2 8 2008

(Date Mailed)

Enclosures(s)

cc:

CHILDREN'S HOSPITAL
111 Michigan Avenue, N.W.
Washington, DC 20010

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWRENCE R. HUDSON, JR.,

        Plaintiff,

    v.

CHILDREN'S NATIONAL MEDICAL CENTER
111 Michigan Avenue, N.W.
Washington, DC 20010-2970,

        Defendant.

CIVIL ACTION NO. 1:08-cv-00876-RMU

## PROPOSED ORDER

Upon consideration of Defendant Children's National Medical Center's Motion to Dismiss and supporting Memorandum and Plaintiff's response to the Motion, if any, it is hereby ORDERED that:

1.    Defendant's Motion to Dismiss is GRANTED; and

2.    Plaintiff's Complaint is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

Entered this _____ day of _____, 2008.

_____
Ricardo M. Urbina
United States District Judge

Copies to:

David A. Rosenberg, Esquire
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 700
Washington, DC  20036
E-mail:  drosenberg@fordharrison.com
*Counsel for Defendant Children's National Medical Center*

James Q. Butler, Esquire
818 18th Street, 6th Floor
Washington, DC 20006
E-mail: jqbutler1@hotmail.com
*Counsel for Plaintiff Lawrence R. Hudson, Jr.*

DC:75422.1